Good morning, Your Honors. I'm Lynn Ball from San Diego, and I represent Mr. Mark Neel. Mr. Neel, at the time of this offense, was approximately 49 years old, and had suffered for many years from bipolar disorder. He and his girlfriend, Lori Stauffer, who was a co-defendant in this case, were residing in front of the San Diego Public Library at E Street, were approached by what I could only describe as a group of people who were described as a broker, who desired to have them enjoy a stay in Tijuana, a hotel, at the expense of some individuals who were involved in alien smuggling. They went down to Tijuana, stayed in a hotel, got free food, free lodging for a while, and then were given a Mercedes automobile, which Ms. Stauffer, who was his romantic companion, who he described as a common life, drove the automobile with Mr. Neel as a passenger. They came to the border. The order patrol could not open up the trunk. The car was searched and there was a gentleman, an alien, in a gas tank type of compartment. Mr. Neel was interviewed. He waived his mercy, and was released. Miranda admitted that he was involved in this and admitted that, indeed, he knew that there was someone in the automobile, was concerned about whether he would receive time served. He was represented by an able lawyer, and Ms. Stauffer was a co-defendant, and during the course of this, she made an agreement with the government to testify against Mr. Neel. The trial lawyer took Mr. Neel. Mr. Neel indicated, apparently, that he wanted to plead guilty at the last minute. The case was set for trial. But the problem with his pleading guilty was that he wouldn't confess error, and confess that he did the crime. Isn't that right? He said he was innocent? That's right, Your Honor. What he said was that, although in spite of the fact that he had admitted that he knew that there was someone in the automobile, during the colloquy between the district judge and Mr. Neel, he said, yes, I did not know that there was anybody in the vehicle. He changed his testimony entirely, his position entirely. What's interesting about this case is that his lawyer had indicated to the judge that this is going to have to be an Alford plea judge. You still need some sort of factual basis in the record for the judge to accept an Alford plea. He may not have to admit it, but somebody's got to point to something and say, here, this is sufficient, this shows. Right. Well, there was, I think, the ability to do a factual basis, and indeed, Mr. Miller, who is arguing here today, pointed out that essentially he laid a factual basis, essentially said, look, Mr. Stafford is going to testify as to what happened, that they both knew that there was an alien in the compartment. He admitted, Mr. Neel admitted during the time that he was interviewed that there was an alien in the compartment. The other thing that was different about this case is that during the course of Mr. Neel being incarcerated, he had stopped taking his lithium. As I indicated earlier, he had a bipolar disorder. He had stopped taking his lithium, and my understanding from talking to my daughter-in-law, who's a clinical psychologist, is that when you're starting, a person stops taking their lithium, typically they're going into a mania phase, which affects their judgment. Well, counsel, during this plea colloquy that we're talking about, didn't, instead of saying, just saying, I'm innocent, didn't he actually say, that's why I want to go to trial? I don't think he said that. He said something to the effect of, that's why I want a trial? I don't know. It sounded pretty equivocal. And then at some point, the judge said, well, he acknowledged that he had stopped taking his lithium. He asked him, why did you stop taking your lithium? And the guy says, well, so I could think clearer. Yes, I understand that. And then he repeated that, and he said, well, how do you feel today? Yeah, I have a clear head. Right, I know that. So, what's the judge supposed to do? Get down there and? Put a stethoscope on him? No, but I think that under the Macias Flores case, which is a recent case, a 2009 case, I think that the record does indicate that perhaps Judge Burns didn't feel that he could accept a guilty plea from a defendant who was maintaining his innocence. That's exactly what happened in Alford. Alford insisted that he was not guilty, but they were able to lay a factual basis for other evidence. What I'm trying to gather is it appears that, in your papers at least, you argued that there was some mental deficit here, and that's the reason why we should reverse, that he didn't know what he was doing. I'm having a hard time trying to figure out what a district judge could do more than this one did. He wasn't acting erratically in the courtroom, as I've had several defendants do, and I stopped the proceedings. He didn't lack lucidity. He was queried about why he stopped taking lithium, and he said, well, lithium kind of boggles my mind or something, or does something to me. It confuses me, and so I stopped taking it so I could think clearly, and how are you thinking today? Oh, I'm fine, great, basically. Those weren't his words, but that's what he said. And he didn't act anything other than that. So there comes a point where one wonders how far the district court can go. My point in that, and I won't belabor that, was it just strikes me, and you may feel, Your Honor, that the judge did make an adequate inquiry. I just felt that the judge kind of, when he said he wasn't taking the psychotropic medication, he didn't ask him how the lack of taking the psychotropic medication affected his judgment. No, but he did. He asked him, well, how are you feeling today? Why did you stop? And he said, because he told him, because it impairs my ability to think, and I'm not quoting now. Okay, but that's generally what he said, and now I can think clearly because I'm not taking it. That's why I stopped taking it. So the answers he gets from the defendant are exactly the opposite of what would raise red flags. I understand that. I'm not, you know, today I'm primarily focusing on the Macias Flores case, and whether or not- What does Macias Flores tell us? Basically, the Macias Flores case was a case involving an Alfred situation, and this guy wanted to plead guilt. He had been offered life, a life sentence, and rather, or he'd been offered something less than a life sentence, and so he went in there to plead guilty, and he said, well, yeah, I want to plead guilty, but I'm not really guilty. And then the judge just said, well, if you're not really guilty, let's go to trial. And there was a long discussion about whether or not the judge could actually take an Alfred plea on someone who insisted they weren't guilty so that he could take advantage of the plea bargain. And the court says that one of the things that you look at is whether or not the court mistakenly thought it could not accept a guilty plea from a defendant who maintained his innocence. And that's what this defendant was doing. He said, you know, I didn't know that somebody was in the car, and that's what Alfred did. He said, I didn't kill this guy, but I want to take the deal. And the judge says, in the colloquy, says, he says, I cannot and will not accept your plea. And basically, essentially, he says, I cannot take your plea if you're insisting that you're innocent. Now, we don't know from this record whether or not Judge Burns felt that he couldn't take the plea or if he just didn't want to take the plea. And Judge Kaczynski said in an earlier case, which was Vasquez-Ramirez, which is cited in Macias-Forres, look, if you are able to fulfill Rule 11, and you can lay a factual basis, which could have been done here, in other words, from the testimony of the co-defendant, what he said earlier, and if he still wanted to go to plead guilty, to take advantage of not getting a higher sentence, if he went to trial, then you could, you're supposed to take the plea. And there's a discussion about whether or not a judge has to. And that hasn't, has to do that, or whether it's discretionary, that hasn't been decided by your court. You're still sort of up in the air. And this might be a good case to discuss that. I don't know. Or make that decision. Well, it seemed to me, I didn't get the impression that Judge Burns, I didn't get the impression he didn't understand what Alford was. Oh, I'm sure, I know Judge Burns, I've known him for 25 years. He knows what Alford is. All right. And Alford is, by its very nature, a plea where somebody has overwhelming evidence against them, such as it appears to have been here. And the defendant doesn't, you know, it's different from a nolo contendere plea, but it's a, yeah, a little bit different. There are some nuances there. But even with Alford, you have to have the Rule 11 requirements met, and you can see that. Sure, but I think that my plea is. And I got the impression that the judge didn't think so, because, you know, he was maintaining, you know, there was this ambiguity as to whether, did you know, did you know the guy was, well, I met him when he was in the tank, or I saw him in the tank. And they took it to mean the gas tank, which is where he was, actually, where the gas tank would be, or the holding tank, you know. And then there was that ambiguity. Well, that was clarified, though. I mean, it wasn't a statement. It was actually clarified. So anyway, that was out there. And then you had further this, you know, this issue of whether he was looking the other way, if he was four feet away. Was he looking that way? Was he looking this way? Where was he looking? And then he said, no, I didn't know anybody was in there. His former girlfriend or whatever she was, common-law wife, said he knew it. I mean, the evidence was pretty strong. Was there any plea bargaining before all this took place? Don't know. I mean, I really don't know. You weren't counsel there, were you? No, I got appointed in this case. Yeah. So I don't know. Mr. Miller, if you want to ask him, he would know. Yeah, he would know. He would know. I'm assuming that there was the standard offer, you know, like a two or three-year offer. He was a category six, so he's pretty high. What did he eventually get? Seventy months. Okay. Yeah, seventy months, which if he pledged straight up, you know, he probably would have gotten a neighborhood even of 46 to 57, something like that in that neighborhood. All right. I was assuming the judge would have given him acceptance of responsibility even in an Alfred Police situation. That's not entirely. No, not entirely, although, boy, it's pretty rare. I've been doing this a long time for somebody who pleads guilty and doesn't get at least two points. It's pretty darn rare. I think Judge Burns probably would have given it to him. Just throw him the bone. Why don't you save the balance of your time for rebuttal? All right. Thanks, sir. Good morning. I'm Steve Miller from the United States. Counsel made a comment that he thought it wasn't clear whether or not Judge Burns just didn't want to take the plea. The quote that you were looking for is on excerpt of records, the defendant's excerpt of records 29. He was taking the plea the day before the trial, and it was going to be a straight up plea, which is an important factor in this present case. And he advised Mr. Neal of all of his rights, asked him if he had a clear head, have he taken any drugs, and then he went through the elements, and everything that Mr. Neal told the judge led the judge, Judge Burns, to have the reasonable deduction that he knew exactly what he was doing. And it got to the point where he said, okay, you were riding in a car with Ms. Stauffer, yes, and there was an undocumented alien in that car, yes, and you knew that alien was in there. No. And whether or not we think Judge Burns just didn't want to take the plea, it's one of the things that the defendant said, and that's on page 29, where he said, at the time I had no idea. That's the only reason I want to take this to trial, Your Honor. We were supposed to rent a car. Yeah, that's what I, I remember him saying, I want to take this to trial. And I was scrambling to find that quote. Yeah. Since it was. So that's what raised, because an Alford plea, you're going to get the defendant saying, well, you know, I didn't do it, but I know the evidence is overwhelming, so it was Alford. Well, and there's two things about an Alford plea. Well, actually, the main distinction here is that when someone, we could say, let's not say we did, I want to have a guilty plea entered because the consequences, the alternative, I would miss out on the opportunity to plead to a lesser charge, to a reduced charge or a reduced sentence. That was not the case here. You asked about the plea negotiations. No, I didn't. Judge Paez did. I'm interested, though. It's a great question. I was trial counsel. And what had happened was we had plea negotiations up until the time Ms. Stauffer pled. And then at that time, the die was cast. Now, one of the requirements of Rule 11 is that the defendant actually want to plead guilty and not go to trial. Because you have to go through a huge colloquy about waiving your trial rights and all that. And it was. And then he said in the middle there, that's why I want to go to trial. It was going remarkably well up until the time he asked Mr. Neal, so you knew that the person was in the car? And he said, no. And Judge Burns then went a step further and said, okay, Mr. Neal, you say you didn't know that the person was in the car. But there's another option. Are there circumstances that occurred leading up to this offense where you would have had suspicions and you chose not to inquire further? The willful blindness, yeah. Yes. And Judge Burns was laying it out to him on a silver platter. Okay, if you say you didn't know, what about your suspicions? And Mr. Neal was adamant. I did not know. I had no idea until I saw the guy in the holding tank. And with that, the court said, well, that's what trials are for. He indulged the government the opportunity not to have to go to trial the next day, but gave me until Wednesday or Thursday, actually until Thursday to start the trial. But the other thing with regard to Mr. Neal's argument that lithium had an effect upon his ability to plead guilty, this is kind of like the opposite cases where most of the cases are because I was taking drugs, I was incompetent to plead guilty, so let's withdraw or vacate my guilty plea. This is kind of an opposite circumstance where he's saying, well, I'm not taking drugs, made me incompetent not to plead guilty. The affirmative evidence before the court and at the trial leads to the reasonable deduction that the lithium really did not play a part in his competency to whether to plead or not plead guilty. He said that, and this is both before Judge Burns and at trial, he said that the lithium, I don't think clearly when I take lithium. And then at trial he told the jury, that is for my anxiety, I'm agoraphobic. It's also for my bipolar disorder. Well, those mental defects did not include a delusion. And in this case, in order for there really to be an incompetency to plead guilty, he had to have the delusion that he didn't know, when in fact he did, because the overwhelming evidence was that he knew. But also, and we know that he knew because when he was interviewed, he said, I knew the person was in there, I was doing it for money. And then he chuckled when he said, did you know it was against the law? Counsel, what is the obligation of a judge to accept such a plea, an Alfred plea? Is it discretionary? It's discretionary. And obviously there are some, I mean, there's no absolute. It's up to a point. Yes. I mean, there's no absolute right to have an Alfred plea. And the judge is entitled to use his best discretion. But in the distinction with this case, it's most Alfred pleas, or NOLA pleas, in addition to having the opportunity to have a reduced sentence for a lesser charge. That was not the case here. Well, that assumes that he would have gotten the same sentence if Judge Burns had accepted his so-called Alfred plea. Yes. And you also made the point that had he taken the Alfred plea, in light of the fact that he then affirmatively stated, I didn't know he was in there, then the circumstances would have been different with regard to any reduction for acceptance But if we're also evaluating his clarity of mind, competency not to plead guilty, if you examine his testimony, he had the presence of mind in order to conform his testimony to what he believed he needed to communicate to the jury in order to get an acquittal. I mean, in light of the overwhelming evidence, and at trial, we played his statement from beginning to end. And then he had the presence of mind to formulate an explanation, explaining away. It wasn't adequate, but he still had that presence of mind. Is there any other questions that you wish to address? I don't think so. About a minute and a half for rebuttal. I just wanted to mention the instruction issue just briefly. Judge Burns sort of muddled the aiding and abetting instruction, muddled it quite a bit when he read it orally. The written one wasn't so bad. But the one thing that I pointed out in my brief, it seems to me like the aiding and abetting, the aiding and abetting in an alien smuggling case has to have basically the same mental element. Let's assume that the error was there. What now? Right. Because I think the government would agree with you. Right. Am I right? Yes. All right. So now let's assume that was an error. So now what? Well, the question is whether or not it's reversible error, whether or not the error was pointed out adequately. There was a big discussion about, between Judge Burns and the trial lawyer, about whether or not there's a specific intent element in aiding and abetting. And Judge Burns said, no, that's just for attempt. It just dismissed it all and didn't really give him an opportunity to argue. It just seemed like that there was error there. Whether or not you think he would have been convicted anyway, that's another issue, I suppose. Thank you. Okay. Thank you very much. We appreciate the arguments on this case. And it's submitted. And we're going to take a short ten-minute recess before we hear our final case for the day, which is advertised. All right.
judges: Ezra, Fletcher B. , Paez